# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Nationstar Mortgage LLC,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>D'Andrea Community Association, et al.,<br><br>　　　　Defendants. | 3:15-cv-00377-RCJ-VPC<br><br>**ORDER** |

This case arises out of a homeowners' association foreclosure sale. Pending before the Court is Plaintiff Nationstar Mortgage LLC's ("Nationstar") Motion for Summary Judgment (ECF No. 27). As the basis for its motion, Nationstar advances a single argument: That the Federal National Mortgage Association ("Fannie Mae") owned the note and first deed of trust on the subject property at the time of the foreclosure sale, with Nationstar as beneficiary of record. Accordingly, Fannie Mae's interest in the property could not have been extinguished by the foreclosure sale, because the Federal Housing Finance Agency ("FHFA") did not consent to foreclosure. *See* 12 U.S.C. § 4617(j)(3).

Because Nationstar's evidence fails to establish that there is no genuine dispute of material fact with respect to the existence, nature, and timing of Fannie Mae's purported interest in the property, its motion is denied.

/ / /

I. **FACTS AND PROCEDURAL HISTORY**

On or about October 5, 2007, Laura Kerr purchased real property at 3247 Modena Drive, Sparks, Nevada 89434 (the "Property") via a $196,000 loan (the "Loan"), secured by a first deed of trust (the "DOT") recorded on October 9, 2007. (Compl. ¶¶ 8, 13, ECF No. 1.) The Property is governed by a set of codes, covenants, and restrictions (CC&Rs) that establish, among other things, the homeowner's obligation to pay dues and assessments; that obligation is enforced by Defendant D'Andrea Community Association (the "HOA"). (*Id.* at ¶ 3; Opp'n Mot. Summ. J. 3–4, ECF No. 35.)

Nationstar argues that on or about December 1, 2007, Fannie Mae purchased the Loan, acquiring the note and DOT, and thereafter never resold it. (Mot. Summ. J. ¶¶ II(A)(4)–(7), ECF No. 27.) However, on or about October 13, 2011, non-party Mortgage Electronic Registration Systems, Inc. ("MERS") recorded an assignment of its interest in the DOT to non-party Bank of America, N.A. ("BOA"). (ECF No. 27-6.) Another assignment was recorded on May 6, 2013, transferring BOA's interest to Nationstar. (ECF No. 27-8.) These assignments transferred "all beneficial interest" under the DOT, along with "the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust." Contrary to the facial import of these assignments, Nationstar argues that ownership of the note was never transferred to BOA or Nationstar; rather, the assignments merely made BOA, and subsequently Nationstar, servicers of the Loan and beneficiaries of record of the DOT. (Mot. Summ. J. ¶¶ II(A)(9)–(11), ECF No. 27.)

After purchasing the home, Ms. Kerr failed to pay assessments under the CC&Rs, and the HOA recorded a notice of delinquent assessment lien on August 12, 2011, a notice of default and election to sell on May 3, 2013, and a notice of foreclosure sale on October 21, 2013. (*Id.* at ¶¶

II(C)(17)–(19).) The Property was ultimately sold to Defendant LVDG at auction on December 19, 2013 for $5,233. (*Id.* at ¶ II(C)(20).)

On or around July 21, 2015, Nationstar filed this action against the HOA and LVDG, primarily seeking a declaration that the foreclosure sale did not extinguish its interest in the DOT. Nationstar now moves for summary judgment on the theory that Fannie Mae owned the note and DOT at the time of the foreclosure sale, and therefore extinguishment of the DOT is preempted by 12 U.S.C. § 4617(j)(3).

## II.     LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* On a summary judgment motion, a court's function is not to weigh the evidence and determine the truth, but to decide whether there is a genuine issue for trial. *See id.* at 249.

In determining summary judgment, the federal courts use a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then

shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). Moreover, at the summary judgment stage, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

### III. ANALYSIS

#### A. The preemptive effect of § 4617(j)(3) is now well-established in this District.

This Court and others in the District of Nevada have ruled that 12 U.S.C. § 4617(j)(3) prevents the sale of any property in which the FHFA (as conservator of Fannie Mae or Freddie Mac) has an interest without the FHFA's consent. *See, e.g., My Glob. Vill., LLC v. Fed. Nat'l Mortg. Ass'n*, No. 2:15-cv-00211, 2015 WL 4523501, at *4 (D. Nev. July 27, 2015) (Jones, J.) (citing *Skylights LLC v. Byron*, 112 F. Supp. 3d 1145, 1148 (D. Nev. 2015), *appeal dismissed* (Feb. 2, 2016)). The *Skylights* case has been cited many times by the judges of this District and only with approval. As the Court has noted previously, it considers this point of law settled until the Court of Appeals rules otherwise. *See Kielty v. Fed. Home Loan Mortgage Corp.*, No. 2:15-cv-00230, 2016 WL 1030054, at *3 (D. Nev. Mar. 9, 2016) (Jones, J.).

#### B. Fannie Mae's interest in the Property is genuinely disputed.

Accordingly, the outcome of Nationstar's summary judgment motion turns on whether Fannie Mae held an interest in the Property at the time of the HOA sale—a fact the parties dispute. Nationstar argues that Fannie Mae acquired ownership of the note and DOT on

December 1, 2007, and maintained ownership through the date of the HOA foreclosure sale, which the parties agree occurred on December 19, 2013. As evidence of Fannie Mae's ownership of the Loan, Nationstar provides the declarations of John Curcio, Assistant Vice President for Fannie Mae (ECF No. 27-2) ("Curcio Declaration"); A.J. Loll, Litigation Resolution Analyst for Nationstar (ECF Nos. 27-3, 27-4) ("Loll Declaration"); Eric Maltese, Loan Operations Manager for Fannie Mae (ECF No. 27-5) ("Maltese Declaration"); Fay Janati, Litigation Resolution Analyst for Nationstar (ECF No. 30) ("Janati Declaration"); and Jamie Cooper, Assistant Vice President/Mortgage Servicing Team Manager of the Consumer Resolution Team for BOA (ECF No. 31) ("Cooper Declaration").

In general, the declarants state they are familiar with their employers' internal data systems, and, based on information stored in those data systems, Fannie Mae acquired the Loan on or around December 1, 2007. For example, the Curcio Declaration is accompanied by a printout from Fannie Mae's Servicer and Investor Reporting System ("SIR"), and Mr. Curcio states that the SIR reflects that Fannie Mae acquired the Loan on December 1, 2007, and "remains the owner of the Loan." (ECF No. 27-2, Ex. A.) Likewise, the Loll Declaration includes screenshot printouts from Nationstar's database, which Mr. Loll asserts establish that Fannie Mae owns the Loan, and specifically owned it on the date of the HOA sale, although the date of acquisition is not clear.[1] (ECF No. 27-3, Ex. 1.) Similarly, the Cooper Declaration

---

[1] Mr. Loll submitted two declarations in support of Nationstar's summary judgment motion. (ECF Nos. 27-3, 27-4.) The first declaration, dated January 29, 2016, states that the "Closing Date" indicated in Nationstar's records is the date of Fannie Mae's acquisition of the Loan. (ECF No. 27-3, ¶ 5(c)(iii).) In the screenshots attached to Mr. Loll's declaration, the "Closing Date" is October 4, 2007. (ECF No. 27-3, Ex. 1.) On this basis, Mr. Loll stated in his declaration that Fannie Mae acquired ownership of the Loan on October 4, 2007. (ECF No. 27-3, ¶ 5(c).) However, in his supplemental declaration, dated April 11, 2016, Mr. Loll stated that he was mistaken about the meaning of the "Closing Date" field in Nationstar's records, and that he had, in the time since his original declaration, "learned [Fannie Mae] acquired ownership of the loan on or about December 1, 2007." (ECF No. 27-4, ¶¶ 2–4.) Mr. Loll's supplemental declaration does not provide the basis upon which he asserts Fannie Mae acquired the Loan on December 1, 2007, nor even state how Mr. Loll "learned" this information.

includes screenshot printouts from BOA's database, which again are said to show that Fannie Mae acquired the Loan on December 1, 2007. (ECF No. 31, Ex. 1.)

Some courts in this District have found evidence of the type presented here sufficient to establish Fannie Mae's ownership interest. *See, e.g.*, *Fed. Hous. Fin. Agency v. SFR Investments Pool 1, LLC*, No. 2:15-cv-01338, 2016 WL 2350121, at *6 (D. Nev. May 2, 2016) (Navarro, C.J.); *G & P Inv. Enterprises, LLC v. Wells Fargo Bank, N.A.*, No. 2:15-cv-907, 2016 WL 4370055, at *3 (D. Nev. Aug. 4, 2016) (Mahan, J.). However, other courts in the District—including this Court—have found such evidence, without more, inadequate to warrant summary judgment. *See, e.g.*, *Kielty*, No. 2:15-cv-00230, 2016 WL 1030054, at *3; *LN Mgmt., LLC Series 5664 Divot v. Dansker*, No. 2:13-cv-01420, 2015 WL 5708799, at *3 (D. Nev. Sept. 29, 2015) (Jones, J.); *LN Mgmt. LC Series 5271 Lindell v. Estate of Piacentini*, No. 2:15-cv-00131, 2015 WL 6445799, at *4 (D. Nev. Oct. 8, 2015) (Dorsey, J.); *LN Mgmt. LLC Series 2543 Citrus Garden v. Gelgotas*, No. 2:15-cv-00112, 2016 WL 1071005, at *6 (D. Nev. Mar. 16, 2016) (Du, J.) ("[N]either the Curcio Declaration nor the SIR Exhibits establishes that there is no genuine dispute of material fact as to when Fannie Mae acquired the requisite interest in the Property, and what the contours of that interest are.").

However, even setting aside the question of whether the declarations and exhibits submitted by Nationstar are alone sufficient to satisfy its initial burden on this motion, the Court finds there is contradictory evidence that makes summary judgment inappropriate. As LVDG points out in its opposition, Nationstar's evidence is "directly controverted by the recorded chain of title related to the Property, which is devoid of any indication that Fannie Mae ever possessed any interest in the Property or the First Deed of Trust." (Opp'n Mot. Summ. J. 7–8, ECF No. 35.) Most notably, the DOT was assigned to Nationstar on April 3, 2013, and the assignment was

recorded on May 6, 2013. (ECF No. 27-8.) This is more than a year after Nationstar argues Fannie Mae purchased the Loan, and several months prior to the HOA foreclosure sale. The April 2013 assignment expressly conveys to Nationstar "all beneficial interest" under the DOT, including the note. (*Id.*) In fact, it is this very April 2013 assignment upon which Nationstar apparently based the assertion in its Complaint—which it contradicts on this motion—that it was the owner of the DOT. (Compl. ¶ 2, 14, 17, ECF No. 1; Opp'n Mot. Summ. J. 5, ECF No. 35.) In contrast, Nationstar has presented no document assigning the note to Fannie Mae in December 2007, or at any other time, or suggesting the terms of that assignment. Indeed, the Maltese Declaration appears to confirm that no such document exists, stating that Fannie Mae's "acquisition of a particular mortgage loan is not reflected by an independent contract specific to that loan." (ECF No. 27-5, ¶ 6.)

Moreover, the recorded chain of title contains document number 4282564—a Notice of Breach and Default and Election to Cause Sale of Real Property under Deed of Trust ("Notice of Default"), executed September 19, 2013, approximately three months prior to the HOA foreclosure sale.[2] Attached to the Notice of Default is an Affidavit of Authority to Exercise the Power of Sale, signed by Kiandra Gildon, who purports to be a duly authorized representative of Nationstar. The affidavit, signed under penalty of perjury, unambiguously identifies Nationstar as the servicer of the obligation or debt secured by the DOT, the beneficiary of record of the DOT, *and the holder of the note secured by the DOT*. There is no mention in the affidavit of any interest held by Fannie Mae.

Therefore, the documents in the recorded chain of title indicate on their face that Nationstar owned the DOT and the note at the time of the foreclosure sale. When viewed in the

---

2  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

1 light most favorable to the non-movant, these documents are more than enough to create a

2 genuine dispute of material fact and preclude summary judgment. *See Kaiser Cement Corp. v.*

3 *Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986) ("[W]e must view the evidence

4 and inferences therefrom in the light most favorable to the party opposing summary judgment.").

### C. *Montierth* does not change the fact that Fannie Mae's interest is in dispute.

Furthermore, Nationstar's arguments based on *In re Montierth*, 354 P.3d 648 (Nev. July 30, 2015), are not well-taken. Nationstar asserts that Fannie Mae has owned the DOT since December 2007, and the April 2013 assignment to Nationstar merely had the effect of making Nationstar the beneficiary of record under the DOT, to permit Nationstar to service the Loan, while Fannie Mae retained ownership of the Loan and the DOT. (Mot. Summ. J. ¶¶ II(A)(9)–(11), ECF No. 27.) Citing *Montierth*, Nationstar argues that under Nevada law, a deed of trust need not be recorded in its owner's name for the ownership interest to be valid, and that "it is possible for a one entity to serve as the beneficiary of record, who is assigned the deed of trust and reflected in the property records, while another entity owns the loan and thus the deed of trust, so long as the two parties are in a contractual relationship." (Reply Mot. Summ. J. 6–7, ECF No. 36.)

To be sure, the relationship that Nationstar asserts to exist between it and Fannie Mae is legally possible. However, whether such a relationship actually existed between Nationstar and Fannie Mae at the time of the HOA foreclosure, as well as the details of that purported relationship, are not evident from this record. The April 2013 assignment to Nationstar and the September 2013 affidavit of authority, signed by Nationstar under penalty of perjury, facially indicate that Nationstar was not only the beneficiary of record of the DOT but also the owner of the note. These recorded documents directly contradict Nationstar's present contention that

Fannie Mae owned the Loan at the time of the foreclosure sale. "Thus, even if 12 U.S.C. § 4617(j)(3) precludes the HOA's foreclosure sale from wiping out a Fannie Mae first deed of trust, whether *this* deed of trust was, in fact, property of Fannie Mae (and thus property of its conservator the FHFA protected by 12 U.S.C. § 4617(j)(3)) at the time of the foreclosure remains genuinely disputed." *See Estate of Piacentini*, 2015 WL 6445799, at *4.

## CONCLUSION

IT IS THEREFORE ORDERED that Nationstar's Motion for Summary Judgment (ECF No. 27) is DENIED.

IT IS SO ORDERED.

Dated this 4th day of January, 2017.

_____
ROBERT C. JONES
United States District Judge